OPINION
On November 3, 1995, Valerie Crosier, a minor, was operating her step-mother's motor vehicle on State Route 212 in Tuscarawas County, Ohio. There were four passengers in the vehicle: Patricia Canfield, Amanda Reardon, Raymond A. Thompson, Jr., and Crystal Byers. Valerie Crosier was attempting to pass another motor vehicle, but collided head-on with an on-coming vehicle. Douglas H. McCahill was driving the vehicle Valerie Crosier struck. McCahill had three passengers in his motor vehicle: Matthew Rice, Martin Schlabach, and Gretchen Fankhauser. The collision resulted in the death of Matthew Rice and serious injuries to most, if not all, of the survivors. McCahill, Reardon, Thompson, Fankhauser, Canfield, and the Estate of Matthew Rice all filed lawsuits against Valerie Crosier. Additionally, separate complaints were filed seeking declaratory judgments pertaining to coverage available to the injured, and to Matthew Rice's estate, under various insurance policies issued to Valerie Crosier's natural father, Vernon Crosier, her paternal grandfather Audrine Crosier, and her paternal uncle, Barry Crosier. The trial court consolidated the declaratory judgment cases for the purposes of discovery and dispositive motions. The trial court then granted motions for summary judgment on various issues, and seven appeals are before us now all arising out of the same facts and circumstances. We will consolidate the cases for purposes of this opinion only, although certain variations in the individual cases require separate comment. On the issue of the declaratory judgments, the trial court found Valerie Crosier is an insured under the Westfield National Insurance Policy issued to her father, Vernon Crosier. The court further determined Valerie Crosier was not an insured under the Westfield National Insurance Policy issued to Audrine Crosier nor under the umbrella policy issued by Cincinnati Insurance to Audrine Crosier. Finally, the trial court found Amanda Reardon is entitled to underinsured motorist coverage under a policy issued by Owners Insurance Company to Patrick and Norene Reardon. The seven appeals before us actually present two major issues. The first issue is whether the trial court correctly found Valerie Crosier was not insured under any policy owned by her grandfather Audrine Crosier. This second issue deals with the availability of underinsured motorist coverage to the various injured parties. We will first address the issue of whether Valerie Crosier is an insured under her grandfather's policy, under her father's policy, or both. Douglas H. McCahill assigns two errors to the trial court:
 I. The trial court erred in finding that Valerie Crosier was not an insured under the liability provisions of the defendant Westfield Companies Policy No. NP-7091694 with Audrine Crosier, the named insured, and that no coverage existed under said liability policy for the damages sustained by appellant stemming from the November 3, 1995 motor vehicle collision.
 II. The trial court erred in finding that Valerie Crosier was not an insured under the liability provision of defendant Cincinnati Insurance Company Policy No. CPC2724031 with Audrine Crosier as next insured and that no coverage existed under said liability policy for damages sustained by appellant stemming from the November 3, 1995 motor vehicle crash.
Ray A., Barbara J., and Ray A. Thompson, Jr., assign two errors to the trial court:
 I. The trial court erred in finding that Valerie Crosier was not an insured under the liability provisions of the Westfield Policy issued to Audrine Crosier.
 II. The trial court erred in finding that Valerie Crosier was not an insured under the liability provisions of the Cincinnati Umbrella Policy issued to Audrin Crosier.
Patrick, Norene, and Amanda Reardon, a minor, assign two errors to the trial court:
 I. The trial court erred in finding that Valerie Crosier was not insured under the liability provisions of the defendant Westfield Companies Policy WNP-7091694 with Audrine Crosier the named insured and that no coverage existed for said liability policy for the damages suffered by plaintiffs stemming from the November 3, 1995, traffic crash.
 II. The trial court erred in find that Valerie Crosier was not an insured under the liability provision defendant Cincinnati Insurance Company Policy No. CVC2724031 with Audrine Crosier as named insured and that no coverage existed under said liability policy for the damages suffered by plaintiffs stemming from the November 3, 1995, traffic crash.
Max, Gayle, and Trisha Canfield, a minor, assign two errors to the trial court:
 I. Plaintiff appellant Canfield is legally entitled to recovery under the liability coverages of the Westfield and Cincinnati Insurance Company policies for Vernon Crosier, Audrine Crosier and Barry Crosier.
 II. U. I. M. coverage under the Westfield Policy of Vernon Crosier is available to plaintiff appellant Canfield in the amount of $300,000 minus the amount received under the liability coverage.
Civ.R. 56 (C) states in pertinent part:
 Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-movant, reasonable minds could draw different conclusions from the undisputed facts, Hounshell v. American States Insurance Co. (1981), 67 Ohio St.2d 427
at 433. A trial court may not resolve ambiguities in the evidence presented, Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321. A reviewing court reviews a summary judgment the same standard as the trial court, Smiddy v. The Wedding Party, Inc. 91987), 30 Ohio St.3d 35
. The parties all agree the facts are not disputed, and the matter may be resolved on issues of law. First Issue for Review The first issue we must address is whether Valerie Crosier was insured under the liability provision of the Westfield Policy issued to the grandfather, Audrine Crosier. The related issue is whether Valerie Crosier was an insured under the liability provisions of the Cincinnati umbrella policy issued to her grandfather, Audrine Crosier. The Westfield Police provides in pertinent part: We will pay damages for bodily injury or property injury for which any insured becomes legally responsible because of an auto accident. The policy goes on to define an insured as "you or any family member for the ownership, maintenance or use of any auto or trailer." Section 1, definitions define a family member as ". . . a person related to you through blood, marriage or adoption who is a resident of your household. This includes a ward, foster child, or any person under the age of 21 who is in the care of any "insured"." (Emphasis sic).
The trial court found Valerie Crosier was not an insured under the liability provisions of the Westfield Policy issued to her grandfather because she was not a family member of his household on the date of the accident under a reasonable and plain, common sense meaning of the term as it appears in the insurance policy. The trial court also found as a matter of law Valerie Crosier was not a "dual resident" of the households of Vernon Crosier, her father, and Audrine Crosier, her grandfather. The court determined instead Valerie's exclusive residence on November 3, 1995, the date of the accident, was with her father. Finally, the court declined to apply the so called "bright line" test to determine dual residency as urged by the plaintiffs. The court found a grandparent/grandchild relationship was simply inappropriate for the "bright line" dual residency test. The court further found Valerie Crosier did not meet the "some duration and with some regularity" test for dual residency. We agree with the trial court the "bright line" test articulated by the Second District Court of Appeals in Plessinger v. Cox (December 31, 1997), Darke App. Nos. 1428 and 1429, unreported is not appropriate. The Plessinger court found the "some duration and some regularity" test did not serve the interest of divorced parents who purchased insurance policies to comply with their moral and legal responsibilities to their children, regardless of whether they are residential parents or simply enjoy visitation with the parent, Plessinger at 4. The "bright line" test makes the child a resident of both the residential parents' home, and the non-residential parents' home, if the non-residential parent has visitation rights. The "some duration and with some regularity" test is much more appropriate for situations like the one at bar. As the trial court noted, the leading case which established this test is Farmer's Insurance of Columbus, Inc. v. Taylor (1987), 39 Ohio App.3d 68. The Taylor court held: Where a policy of insurance providing uninsured motorist coverage does not define the term, "a resident of your household" a minor who lives the majority of the time with her mother and regularly for some duration with her father is resident of both households. A "resident of your household" refers to one who is in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes the temporary or transient visitor.
Syllabus by the court.
The Taylor case involved a child who lived with her father for 162-172 days of the year, although not necessarily consecutive days. The remainder of the time, approximately 200 days, the child was a resident of her mother's household. The Taylor court noted the insurance policy did not define the phrase "resident of your household", nor did it contain language which precluded the concept of dual residency, for example by requiring the residence of the named insured be sole or exclusive residence of the claimant. The Taylor court also noted an "in-again, out-again" concept of residency would be unreasonable. The court of appeals concluded the concept "resident of a household" refers to someone who lives in the home of the named insured for a period of some duration and regularity, not necessarily permanently nor sequentially, as contrasted with a temporary transient visitor. Thus, the Darke County Court of Appeals concluded this child was a resident of both her mother's household and her father's household, notwithstanding the fact she was injured while on route from her father's home at the end of visitation, to live with the custodial parent, the mother. The depositions of Valerie Crosier, her sister Beth, her former step-mother, Audrine and Lucille, Vernon Crosier, and Jeff Box, the insurance agent are before us in the record, and provide insight into the grandparent/grandchild relationship, as well as into the father/daughter relationship. The parties' depositions are remarkably consistent and undisputed. It appears at the time of the accident, Valerie had been living in her father's home some three to four weeks, having moved into her father's home, along with her sister, on her father's birthday, September 15. Vernon, Valerie's father, had added her to his insurance policy two weeks before the accident. Valerie had removed most of her belongings from her grandparents' home, although she left some non-essential things at her grandparents' home. Valerie was welcome to stay overnight with her grandparents at any time, but did not do so. After Valerie left, her grandmother "redid" the room that had been Valerie's room. It appears Valerie was not listed on her grandparent's auto policy, but her grandmother Lucille Crosier signed for her learner's permit, and her driver's license. Valerie had lived with her grandparents, the Crosiers, since approximately October of 1991, and the Tuscarawas County Court of Common Pleas designated Audrine and Lucille Crosier as residential parents and legal custodians, awarding to them all parental rights and responsibilities. On November 3, the date of accident, Audrine and Lucille Crosier were still the residential parents and legal custodians of Valerie Crosier, although there was a pending motion to change custody back to her father. On November 28, 1995, the common pleas court changed custody to the father, and found the father, Vernon, was entitled to a return of any child support he had paid after September 1, 1995. We find the trial court misapplied the "some duration and with some regularity" test when it found Valerie did not have dual residency at the time of the accident. Instead, it appears the trial court simply looked to where Valerie Crosier was living on the day of the accident. The "some duration and with some regularity" test precludes this approach, and instead requires the court to take note of the past history and behavior of the parties. It is clear from the record Audrine and Lucille Crosier had provided Valerie Crosier's residence not only with regularity but for a long duration. Audrine and Lucille Crosier, were, by court decree, the parties required to provide a residence for Valerie until November 28, 1995. Although the facts here do support the trial court's finding Valerie had moved into her father's house, the record also supports a finding she had not severed her personal attachment with her grandparents' residence, and had even been at the grandparent's residence on the afternoon of the accident. We decline to look simply at the date of the accident, but rather the circumstances surrounding Valerie's residency. We conclude the record demonstrates Valerie Crosier was a resident of Audrine Crosier's household with some duration and some regularity, and the trial court should have found the record establishes dual residency in both Vernon Crosier's household and Audrine Crosier's household. The first assignment of error in Case Number 1999AP040027, Ray Thompson; the first assignment of error in Case Number 1999AP040025, Douglas McCahill; and the first assignment of error in 1999AP040028, Amanda Reardon, are sustained. We further sustain the first assignment of error in Case Number 1999AP040029, Trisha Canfield, as it pertains to the Westfield Company Insurance Policy. The Cincinnati Umbrella Policy Cincinnati issued a personal umbrella liability policy to Audrine Crosier, which provided for excess insurance over and above the amount provided for in basic policies or damages arising out of personal injury, and property damages claims either excluded or non-covered by the basic policy. The umbrella policy defines the persons who are covered as relatives injured involving an automobile they own, lease, or rent, or use. The policy defined "relative" as ". . . a person related to you by blood, marriage, or adoption who is living in your household and anyone else in you or a relative's care living in your household. . . ." Under the clear language of the policy, Valerie Crosier is related by blood to the grandfather, and was in his care by virtue of the custody order. Further, we find little real distinction between Westfield's term, "residing", and Cincinnati's term, "living in". We find under the principles of dual residency, Valerie Crosier meets the definition of living in Audrine Crosier's household for purposes of the Cincinnati umbrella policy. Had Cincinnati meant to exclude dual residency, it would have been a simple matter for Cincinnati to insert a clause in the contract to accomplish this. Accordingly, in Case Number 1999AP040027, Ray Thompson; Case Number 1999AP040025, Douglas McCahill; Case Number 199AP040028, Amanda Reardon; the second assignments of error are sustained. Likewise, in 1999AP040029, Trisha Canfield, the first assignment of error is sustained as it relates to the Cincinnati Umbrella Policy.
Westfield assigns a single error to the trial court:
APPELLANT'S ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY DECLINING TO ENFORCE THE CLEAR AND UNAMBIGUOUS SET-OFF PROVISIONS IN THE UNDERINSURED MOTORIST COVERAGE SECTION OF THE VERNON CROSIER POLICY AND BY HOLDING THAT THE FULL $300,000.00 LIMITS OF THE UNDERINSURED MOTORIST COVERAGE WOULD BE AVAILABLE TO BE RECOVERED AS ADDITIONAL DAMAGES BY PLAINTIFF-APPELLEE WHEN THE FULL $300,000.00 LIMITS OF THE VERNON CROSIER SINGLE LIMIT POLICY HAD ALREADY BEEN PAID OUT THROUGH THE LIABILITY SECTION OF THAT POLICY.
Auto Owners Insurance Company assigns a single error to the trial court:
ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO RULE THAT OHIO REVISED CODE SECTION 3937.18 (A)(2) MANDATES APPELLEES' CLAIM FOR UNDERINSURED MOTORIST COVERAGE BE REDUCED BY THE AMOUNT OF MONEY APPELLEE HAS AVAILABLE FOR PAYMENT UNDER THE LIABILITY POLICIES OF INSURANCE.
Underinsured Motorist Coverage
The issue presented here is whether the persons who were passengers in Valerie Crosier's car qualify as insureds for purposes of underinsured motorist coverage under the Vernon Crosier policy. The policy limits on the liability section of this policy was $300,000. The underinsured motorist coverage under the same policy was $300,000. The trial court found the underinsured motorist coverage policy limits are available to the various plaintiffs. The trial court made no awards, because the parties have not addressed the issue of damages, and because the record does not disclose what amounts, if any, the claimants have already received. In light of this, and because our decision on the umbrella policy supra will necessarily impact upon the parties' claims, we find the issues regarding the underinsured policies are premature, and we decline to rule on them. For the foregoing reasons, the judgments of the Court of Common Pleas of Tuscarawas County, Ohio, is affirmed in part, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion.
FARMER, J., concurs; EDWARDS, J., dissents in part.